OPINION OF THE COURT
Lucindo Suarez, J.
The issue is whether the Civil Court can entertain an action of ejectment to remove occupants from an illegal basement apartment who have not paid rent for 11 months nor made reasonable attempts to secure alternative accommodations.
This court holds that where the assessed valuation of the property is $25,000 or less, as in the case at bar, it has concurrent jurisdiction with the Supreme Court, a court of general and equitable jurisdiction to entertain an action in ejectment, and, therefore, awards plaintiffs a judgment of possession, issuance of warrant forthwith, and execution thereof stayed until July 15, 1995.
Plaintiffs are the owners of a two-family private dwelling. Defendant and her two children have resided in the basement apartment since June 1990, pursuant to a one-year lease which expired in June 1991. Plaintiff testified that no certificate of occupancy existed for the two-family dwelling, but that no violation of law existed because the premises were exempt from the issuance requirements of Multiple Dwelling Law § 301. In support, plaintiff produced a satisfactory search report which described the premises in the Buildings Department index as "old building erected prior to enforcement of certificate of occupancy regulations.” (Cf., Tompkins Sq. Holding Co. v Gilson, 167 Misc 77 [Manhattan Mun Ct 1938].)
Section 302 of the Multiple Dwelling Law prevents owners from recovering rent where the premises are occupied in violation of the certificate of occupancy. This restriction does not apply in this case because plaintiffs withdrew their claim for money damages and seek only possession. Moreover, in Lee v Gasoi (113 Misc 2d 760, 761, affd 126 Misc 2d 719 [App Term], affd 119 AD2d 1016 [1st Dept 1986]), the court held that the language of Multiple Dwelling Law § 302 (1) (b) refers only to actions or special proceedings relating to the nonpayment of rent. Therefore, the absence of a certificate of occupancy does not bar possession of the premises herein.
However, there was no dispute that the premises were not registered as a multiple dwelling in violation of law. “A 'multiple dwelling’ is a dwelling which is either rented, leased, *970 let or hired out, to be occupied, or is occupied as the residence or home of three or more families living independently of each other.” (Multiple Dwelling Law § 4 [7].) The testimony revealed that the two-family dwelling was unlawfully occupied by three families living independently of each other, thereby triggering the registration requirements of Multiple Dwelling Law § 325. In fact, a holdover proceeding commenced by plaintiffs in the Housing Part of this court was dismissed for lack of jurisdiction, due to plaintiffs’ failure to obtain the requisite multiple dwelling registration for the de facto three-unit multiple dwelling. (See, Ropla Realty Corp. v Ulmer, 110 Misc 2d 619 [Civ Ct, NY County 1981]; Manabhal v Talavera, NYLJ, Aug. 18, 1993, at 24, col 3 [Civ Ct, Kings County]; Redmond v Scaduto, NYLJ, Dec. 4, 1991, at 26, col 4 [Civ Ct, Kings County].)
There was also no dispute that defendant stopped paying the agreed monthly sum of $425 since at least July 1994, and that defendant did not presently intend to pay any amount of rent for the illegal apartment. As for vacating the premises voluntarily, defendant testified that she would move when she "found something else.”
Undoubtedly, plaintiffs are caught in a legal conundrum where they are unable to evict the tenant in a summary proceeding or collect use and occupancy in a Civil Court action. While not identical, these circumstances are similar to those in Corbin v Harris (92 Misc 2d 480 [Sup Ct, Kings County 1977]), wherein the owners of a two-family house who rented a basement apartment were finally awarded possession when they brought an action based in equity in Supreme Court: "we have a situation in which the landlords, who are in violation of the law because of the 'illegality’ of their basement apartment, cannot evict their tenant to remove the violation. They cannot obtain rent at the reduced rental, as the tenant simply refuses to pay, and to add to the Kafkaesque situation, they are obligated to supply their unwanted 'guest’ with free gas, electricity and hot water. For six and one-half years this injustice has been perpetuated. The tenant has been tenacious both in her refusal to remove herself and in her refusal to pay rental for the apartment she occupies.” (92 Misc 2d, at 483 [emphasis added].)
Ordinarily, landlords who are unable to obtain relief in a summary proceeding in Civil Court, as in Corbin (supra), resort to an ejectment action in Supreme Court as the court of general and equitable jurisdiction. (Alleyne v Townsley, 110 *971 AD2d 674 [2d Dept 1985]; see, e.g., Minors v Tyler, 137 Misc 2d 505 [Civ Ct, Bronx County 1987], where it was stated that Supreme Court is the proper forum to determine claim of constructive trust and ejectment; in Melevoi v Yang, 120 Misc 2d 982 [Civ Ct, Queens County 1983], a landlord who was precluded from initiating a summary proceeding pursuant to RPAPL article 7 was given an option to commence an ejectment or summary proceeding in the Supreme Court.)
While the common practice is to seek an ejectment in Supreme Court, this court can entertain ejectment actions "where the assessed valuation of the real property does not exceed $25,000 at the time the action is commenced.” (CCA 203 [j].) "Assessment” is defined in Real Property Tax Law § 102 as "a determination made by assessors of (1) the valuation of real property, including the valuation of exempt real property and (2) whether or not real property is subject to taxation or special ad valorem levies.” Usually, the assessed valuation is a fraction of the property’s market value. As to what qualifies for ejectment, Warren’s Weed, New York Real Property states that ejectment is an action at law to restore possession of real property to the party rightfully entitled to it. Where a party having a right of possession in real property is excluded from it, an action to recover real property enables enforcement of a right of entry against the defendant who is wrongfully denying possession. A variety of relief may be available in an ejection including a determination of the validity of the convenience or the validity of a will devising real property; the establishment of title by adverse possession; and the validity of a deed obtained through fraud or from an incompetent. It is an available remedy for adjoining owners who dispute each other’s rights; for recovery of premises upon breach of a condition subsequent; or for recovery of land conveyed with use restrictions, the violation of which provides the grantor with a right of reentry. (2 Warren’s Weed, Ejectment, § 1.01, at Eject-3, Eject-4 [4th ed].)
Today, the common-law principles of ejectment, currently termed an "action to recover real property”, remain unchanged except as modified by RPAPL article 6. (Alleyne v Townsley, supra; 2 Rasch, New York Landlord and Tenant— Summary Proceedings § 23.12, at 176; § 36.2 [3d ed]; 2 Warren’s Weed, op. cit, at Eject-4.)
At trial plaintiff produced a certified valuation report from the New York City Tax Department indicating the assessed valuation for the premises as $4,296 for the pertinent period. *972 Accordingly, this court has jurisdiction of this action to recover possession. (CCA 203 [j]; cf., Granet Constr. Corp. v Longo, 42 Misc 2d 798 [Sup Ct, NY County 1964], which determined that the Civil Court could entertain an ejectment where the assessed valuation of the property did not exceed $10,000, the jurisdictional limit at that time.)
A further question which should be addressed is whether plaintiffs were required to serve a notice terminating defendant’s tenancy prior to the commencement of this action. At common law, a previous demand or notice to quit was unnecessary to commence an action to recover real property. (13 Carmody-Wait 2d, Action to Recover Real Property §§ 89-118, 89-119, at 722-723.) Since RPAPL article 6 did not modify this principle of the common law, service of a notice of termination is not required as a condition precedent in this action. (Alleyne v Townsley, supra; Southside Dev. Co. v Mitchell, 156 AD2d 268 [1st Dept 1989].) Consequently, a crucial distinction between the statutory summary proceeding previously commenced by plaintiffs and this action is the fact that a termination notice was not a jurisdictional predicate herein. (2 Warren’s Weed, op. cit., § 1.02.)
Therefore, in the event that the assessed valuation of the real property is $25,000 or below, an ejectment action in Civil Court may serve as a useful alternative in those circumstances where a summary proceeding pursuant to RPAPL article 7 is improper. The equity jurisdiction of the Civil Court is fully set forth in CCA article 2, and, thus, the premise that the Supreme Court is the sole province for the adjudication of an ejectment should be examined where the circumstances so merit. (See, CCA 203.)
Finally, defendant’s allegations that plaintiffs breached the warranty of habitability and the lease are not viable defenses in this action for the recovery of real property. However, defendant may seek recovery of rent abatement credits, if any, and damages for breach of contract in a plenary action. (Carcione v Rizzo, 154 Misc 2d 13 [App Term, 2d Dept 1992]; Bartolomeo v Runco, 162 Misc 2d 485 [Yonkers City Ct].)
For the foregoing reasons, plaintiffs are awarded a judgment of possession and issuance of warrant forthwith. Execution of the warrant is stayed until July 15, 1995.