People v Braymiller (2025 NY Slip Op 50271(U))

[*1]

People v Braymiller

2025 NY Slip Op 50271(U)

Decided on March 2, 2025

Justice Court Of The Town Of Orchard Park, Erie County

Pastrick, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 2, 2025
Justice Court of the Town of Orchard Park, Erie County

The People of the State of New York,

against
David C. Braymiller, Defendant.

Docket No. 25010058

Nathan Zobrest, Esq.
Erie County District Attorney's Office
25 Delaware Avenue
Buffalo, New York 14202
For defendant:
Leonard D. Zaccagnino, Esq.
4819 South Park Avenue
Hamburg, New York 14075

Michael J. Pastrick, J.

For the reasons that follow, this court, on its own motion, concludes that defendant is in contempt of its prior directives suspending his driver's license and rejecting his request for an order awarding him a hardship driving privilege (see Judiciary Law § 750 [A]; Uniform Justice Court Act [UJCA] § 210). That determination is based upon an incident that occurred on February 18, 2025 in which defendant, with knowledge of and in contrast to those orders, brazenly drove his vehicle to and parked that automobile in front of the court, in full view of this justice, for the purpose of attending a court appearance in this matter. I.
Defendant is charged with, inter alia, felony aggravated driving while intoxicated (Vehicle and Traffic Law § 1192 [2-a] [a]; § 1193 [1] [c] [i]), felony driving while intoxicated (§ 1192 [3]; § 1193 [1] [c] [i]), and misdemeanor driving while intoxicated (§ 1192 [3]) relative to an incident alleged to have occurred on or about January 1, 2025.At his arraignment in this proceeding—held, to the court's recollection, shortly after midnight on January 2, 2025—the court issued a suspension of the driver's license of defendant, as required by the Vehicle and Traffic Law (see § 1193 [2] [e] [1]). 
By motion made January 27, 2025, defendant sought an order granting him limited driving privileges, "including the privilege to 'travel to or from [his] employment, or to or from [his] necessary medical treatment' " (Pringle v Wolfe, 88 NY2d 426, 433 [1996], cert denied 519 US 1009 [1996], quoting Vehicle and Traffic Law § 1193 [2] [e] [7] [e]). By order entered January 31, 2025, however, this court denied that request on the ground that it "has no authority [*2]under the law and is without discretion to grant th[at] hardship relief" (People v Braymiller, 85 Misc 3d 1206[A], at *2 [Orchard Park Town Court 2025]). Specifically, this court noted, because defendant's driving privileges were suspended based on the combination of the current charges of driving while intoxicated (see § 1192 [2-a]; § 1192 [3]) and his recent prior conviction of driving while intoxicated in Orchard Park Village Court (§ 1192 [3]), and because the Vehicle and Traffic Law does not provide for a hardship privilege in such circumstances, the legislature has deemed that he is not eligible for the extraordinary relief for which he asked.
II.
This court's January 31, 2025 order also indicated that defendant was next scheduled to appear on February 18, 2025 for further proceedings in this matter (Braymiller, 85 Misc 3d 1206[A], at *2). There is no dispute that defendant knew that his license was suspended at his arraignment and was not subsequently restored on a hardship basis. There also is no dispute that, in spite of the orders in which the court suspended defendant's driving privileges and subsequently refused to lift that suspension, defendant
• drove himself to his February 18, 2025 court appearance
• in the same luxury sedan he is alleged to have operated at the time the conduct giving rise to the instant charges occurred
• in full view of this justice, who was headed toward a driveway to the courthouse parking lot at the same time, and then
• parked that vehicle, still in full view of this justice, directly in front of the courthouse before entering that building for the February 18, 2025 appearance.
III.
This court articulated those facts on the record at the February 18, 2025 appearance in this matter. Defendant acknowledged having seen this justice while operating defendant's vehicle, and did not deny having driven that automobile to the courthouse for the purpose of attending the court appearance. Defendant, to the court's recollection, then attempted to justify his disregard of this court's directives on the ground that he had spent over $1,000 on ride sharing since this suspension of his driving privileges, and that his operation of his vehicle was necessary to attend the subject appearance. That meeting, this court notes, was one of which defendant knew or should have known for at least 18 days (see Braymiller, 85 Misc 3d 1206[A], at *2), and for which he had ample time to arrange for transportation.
IV.
Now, following opportunity for further reflection and due consideration, this court concludes that defendant is in contempt of the prior directives of this court suspending his driver's license and rejecting his request for an order awarding him a hardship driving privilege (see Judiciary Law § 750 [A]; UJCA 210). In this court's view, the circumstances of defendant's travel to the courthouse for the February 18, 2025 appearance reflect a "[w]ilful disobedience [of this court's] lawful mandate[s]" (Judiciary Law § 750 [A] [3]) and "[r]esistance wilfully offered [*3]to [this court's] lawful mandate[s]" (§ 750 [A] [4]).[FN1]

In so concluding, this court notes that the order of suspension at issue is occasioned by "the prompt suspension law" (Pringle, 88 NY2d at 429; see Vehicle and Traffic Law § 1193 [2] [e]), which "supplement[s] the government's arsenal in its war against drunk driving" (Pringle, 88 NY2d at 429), and "which[,] under . . . circumstances [such as these,] mandates the suspension of a driver's license to operate a motor vehicle pending prosecution for driving while intoxicated" (id.). That law reflects "an effort to reduce the incidence of drunk driving on New York's roadways" (id.), and is consistent with "the overriding State interest in the 'prompt removal of a safety hazard' from its streets" (id. at 435, quoting Dixon v Love, 431 US 105, 114 [1977]). 
V.
Courts cannot feel guilty about protecting the innocent. In the context of this contempt issue, the innocent to be protected consist principally of those who benefit from the safety promoted by the prompt suspension law.[FN2]
To ignore the brazen violation of this court's directives in furtherance of that law would be to encourage both casual compliance and compliance of convenience with prompt suspension orders in this and other matters. It also would be to undermine not only the authority of this court, but the will of the People manifested in the temporary suspension measures implemented by the legislature. 
Accordingly, for all of the foregoing reasons, this court, on its own motion, concludes that defendant is in contempt of its prior directives suspending his driver's license and rejecting his request for an order awarding him a hardship driving privilege. The parties shall return, as scheduled, on March 18, 2025 for further proceedings in this matter. Those proceedings now shall include a hearing with respect to the punishment to be imposed with respect to defendant's contempt (see Judiciary Law § 751 [1]; UJCA 210), as well as the issue whether the securing order by which defendant, who was not eligible for the imposition of monetary bail (see CPL 510.10 [4]), was previously released under supervision should be modified (see CPL 530.60 [1]). 
Dated: March 2, 2025
Hon. Michael J. Pastrick

Footnotes

Footnote 1:The court also concludes that such behavior was contemptuous conduct committed in the court's immediate view and presence that impairs the respect due to the court's authority (see Judiciary Law § 750 [A] [1]). Inasmuch as those acts were not "committed during [the court's] sitting" (id.), however, this court does not hold defendant in contempt based on misconduct that occurred within its view (see id.).

Footnote 2:Indeed, defendant, like "[e]very person accused of a crime[,] is constitutionally presumed innocent and [owed the] presumption of innocence [that] is a basic component of a fair trial under our system of criminal justice" (People v Weinstein, 42 NY3d 439, 443 [2024]).